Case 15-4066, Katherine Price et al. v. Medicaid Director Office of Medical Assistance et al. Oral Argument. Not to exceed 15 minutes for plaintiffs. 15 minutes will be shared by the defendants and the amicus curiae. So, Mr. Jarosz for the appellants. Good morning. Jeffrey Jarosz on behalf of the appellants and the Directors of the Ohio Department of Medicaid and the Ohio Department of Aging. I'd like to reserve 5 minutes for my friend representing the United States and an additional 2 minutes for myself, Herb Up. Oral Argument. Thank you. To resolve this appeal, this Court need look no further than standing and sovereign immunity. The 11th Amendment limits the relief that federal courts may offer against the State of Ohio. The District Court could only have granted respective injunctive relief. But the named plaintiffs in this case have no standing to seek such relief. Each named plaintiff in this case applied for a Medicaid program, the Assisted Living Waiver. They were each approved for that program, yet disagreed with the date on which they were enrolled in that program. They seek additional coverage in the past and compensation for days that they paid out of pocket. That compensation would necessarily come from State coffers. But the District Court could offer, in some cases, prospective injunctive relief. They could tell the State to do it differently in the future. That relief would not help either named plaintiff. First, the decisions that led to the harm that they assert is in the past. The law that was applied to them has been changed. Wasn't that true in Edelman v. Jordan that the decision was in the past? Yes, it was. And in that case, the Supreme Court held that the Court could not order the State to pay for additional past coverage. And this case is the same. I thought the Court said they could there. What did the Court say they could do there? In that case, they could order the State to do it differently in the future. In terms of compensating the plaintiffs in that case and this one, they said the Court could not issue that relief. Regarding that prospective injunctive relief that the Court could offer, that simply wouldn't help either named plaintiff. As I mentioned, the law has changed. The present law has not been applied to either named plaintiff. And the district court considered and issued an order based on what would have happened or what it thought would have happened if the present law were applied to them. I thought we normally measure standing as of the date when the complaint is filed. Yes, that's right. As they have, right? I mean, as to the interest you're talking about. Not to seek prospective injunctive relief and not to the present law. They may have had standing to try to get something that they can't get under the 11th Amendment to seek retroactive relief. The district court couldn't grant that. What they didn't have standing to get is an order telling the State to do it differently in the future because that wouldn't help them. Well, I mean, I thought that if under the State procedures they were within the period that they could seek to revisit what's just called a denial of the pre-three months, right? So they file this complaint within the 60 days or 90 days or whatever. I thought that if they obtained a ruling in their favor that the federal court could tell the State to consider their appeal of that denial as long as it's within the period. And per the court's substantive ruling, I guess in this case by the district court, that that appeal would be successful. Is that, and I thought that's okay in the 11th Amendment because I understood it in my own statement. I think you are, Your Honor. The case I'm looking at is Green v. Mansour. And in that case, the Supreme Court considered whether the district court could issue a declaration that would then bind the State in subsequent administrative action. That's not, well, okay. I understand your point. Getting back to the predicate of your question, in this case, there's no relief available to either named plaintiff in the State at this point or at the time the district court ordered it. Is that correct if you interpret the 90 days as running from receiving proper notice and say that because of what happened here on the merits, if you go to the merits, they didn't get proper notice of their rights. So after whatever our proceedings, then they would have 90 days from then to raise their claims. Would that not be prospective that then the injunction says, okay, they go ahead, if we interpret the notice requirement, the 90 days from receipt of the proper notice? Why wouldn't that work? Well, if the court were to hold that the notice they received was improper, and it shouldn't for reasons I'll address next, but if you were to hold that, it would be a matter of State law whether that told in some way the 90 days that they would ordinarily receive after decision. I don't think that would happen in this case. For one of the plaintiffs, Mrs. Saunders, the one who is alive today, she, in fact, sought an appeal, and so she sought the appeal to which she was entitled, and there's not a second appeal to be had. So that's, in effect, final or res judicata of any future? Is that the idea? Well, it's – in that appeal, the administration did not reach the issues that she raises here, so we're not arguing res judicata based on that appeal. But getting to the merits of the due process arguments, this court should not find that there was any due process problem. First, this was an approval. As general due process principles, the state has decided to grant appeal rights and put those in the notice, and both plaintiffs received a notice that gave them appeal rights. That's not required by the Medicaid statute because this is an approval, but they did receive that, and each notice also directed them to the law under which that was determined. What they would like is – when they applied, they did not ask for approval as of a specific date, and it's left to the state to look at their application and decide upon an enrollment date. And the notice gave the law that they should look at to see how that was determined. That's enough. What they want is every time there's an approval as of a given date, they want also to be – the notice also to say that it's a denial as to all previous dates. There's no support for that idea, and it would make notices almost incomprehensibly or – approved as of this date, denied as of this date. It would be much more confusing than the pressing notice, which says that you're approved and here's the law on which your date and everything was decided. Look at that if you want to appeal. So simply adding the denial dates would add nothing, but in any event, they received a clear notice. Is your amicus going to address the interplay of Section 834 and the plan of care requirements and that sort of thing? I believe he will, and I will yield to Mr. Clare to address that issue. This is a complicated case, so I want to see if my colleague can answer questions. He'll be back up. All right. You have some rebuttal time. I do, yes. I have two minutes, and I'd like to note that Mr. Fett will address those issues, but in our view, this Court need not reach them. Thank you. Thank you. Good morning, Your Honors. May it please the Court, I'm Jeffrey Clare. I'm counsel for the United States as amicus in this case, and we are in the case to specifically address the federal statutory limitations and eligibility requirements on receipt of home and community-based services under the program. And there are two such requirements. First, the beneficiary must be admitted into the waiver program. One thing that distinguishes these kinds of services from other services under the statute is they are not available to all comers. They are not available simply because an individual is otherwise qualified to be in the Medicaid program to receive inpatient hospital services and doctor services and so forth. What distinguishes these services is the state, by statute, isn't permitted to impose limitations on the number of people who may receive services, on whether these services have to be provided on a statewide basis or not. And, indeed, that is what is waived in the waiver program. What is waived is the requirement that would otherwise apply, that all comers who are otherwise eligible be permitted to receive these benefits. And the second requirement that's at issue here is that once the person, the individual, is admitted into the waiver program, there must be a plan of care that details, finds this is the kind of care that's appropriate for the beneficiary, that the individual has been informed of various options for receiving these kinds of services and has consented to them, that there's been some attempt to make sure the services are appropriate. Counsel, let me go right to that. For me, at least, that seems to be the crux of the case, that does the plan of care have to come first? As a logical matter, it seems to me that there's nothing implausible about saying you start getting services in January, you get a plan of care in March. And if the services that you have received are in line with the plan of care, I don't see anything illogical about saying that it's pursuant to. Now, if it turns out that some of the services you got are not in conformity to the plan of care, then you don't get reimbursed for them. But for the others, you do. So what's wrong with that line of logic? Because there's nothing that I see that says after a plan of care. It just says pursuant to a plan of care. Well, Your Honor, we want to maintain that it's illogical to have a program. But it is not the way the Secretary has construed the statute. And the Secretary's construction of the statute is both a reasonable interpretation of the statute's fine terms and an interpretation that furthers important policy. Yes, but there you have to say that the statute is, in fact, ambiguous. If you read A34, on the face of it, it isn't ambiguous. Well, Your Honor, I think A34 goes to a slightly different question as to whether once an individual has applied for the program, services may be covered three months prior to that date. The plan of care requirement is an additional limitation on eligibility. And the Secretary reads the statute to require it to be in place before services may be covered. So there, then, the question is, are the words pursuant to ambiguous enough to allow the Secretary to impose a temporal requirement? Yes, I think that's a fair way of putting it, Your Honor. In a case where the statute admits it with more than one interpretation, under several principles of administrative deference, that's considered an implied delegation of legislative authority to the administering agency to interpret the statute, so long as the interpretation is based on, in the language of the Chevron case, a permissible interpretation of the statute. It should be sustained upon judicial review. My argument, though, would be that this is not ambiguous, that nobody talks this way. Absolutely. The court could certainly decide this as a Chevron step one question, where the term pursuant to, at least in the legal context, means under the authority of. We think that's, at a minimum, an acceptable reading of the statute. We think it is the most logical reading and natural reading of the statute in this context. And that is not only consistent with the sort of textual analysis of the statute, but it's consistent with the purposes of having a plan of care requirement in the first instance. The statute refers to a, I think, quote, plan. It is a forward-looking kind of document that assumes there's been an assessment of need, some consideration of what services are appropriate for the individual, some consideration of whether these are the kinds of services that can be safely provided outside an institutional setting, some assurance that there's been a discussion with the individual that this is a setting that the individual wants to receive the services in, has a kind of a link to the statute. Yes, sir. In any state other than Ohio, has this problem surfaced? You're from Justice in Washington, right? Yes, sir. Okay. Has this problem been presented anywhere else? And if so, how has the Secretary dealt with it? Well, Your Honor, there are a couple of ways I can answer that question. This is, first of all, a case of first impression so far as we are not aware of any kind of litigation or administrative dispute about it. In terms of whether the question has arisen, the Secretary has issued policy guidance back as far as 2000 that specifically addresses when coverage may begin under a waiver program. And it says, you have this in the record, Your Honor, it's on page 1830 of the ECF pagination of the record. And it says that the last date on which enrollment can be, or rather the earliest date on which enrollment can be established is the date on which the person is actually admitted into the program and the date on which a plan of care is in place. And moreover, when Ohio is considering amending its waiver program, you'll see in the record some e-mail correspondence where Ohio specifically asks how the Secretary is interpreting this A31. No, no, that's the courts that actually analyze the words of the statute. That's my experience with these ruling honors that are kind of illusory. I mean, just as, you know. Well, Your Honor, it's certainly true that there is not a kind of detailed parsing of the statute. But the Secretary is speaking directly to us. That 1830 is what we call the Olmstead update? Yes, that's correct. And again, this is a policy of longstanding. In part, there has been, as Judge Stafford indicated, there's been really no dispute about this. There's not a case where somebody has challenged the Secretary's interpretation and the Secretary has been called upon to parse the statute in this manner. We don't have a rag, we have a ruse, right? Yes. And I think more importantly, Your Honor, the statute charges the Secretary with making hundreds, if not thousands, of determinations like this in the course of reviewing state plan amendments and in the course of approving state plans. The operative question here in terms of severing the deference is, does the statute charge the Secretary with making these kinds of interpretations with the law? It's not clear. So long as it does, we would submit, Your Honor, that deference is required, even if there is not a kind of detail. Well, I mean, it's Skidmore at best, right? Well, we'd say it's Chevron at best. I don't think you'd notice a comment for that. No, Your Honor. I think that, you know, from cases like me and Christensen in the Supreme Court, there was some back and forth at one point as to whether deference could only be accorded to interpretations that were set forth in a more formalized administrative procedure by rulemaking. But my understanding of the current Supreme Court law is that it's not a requirement of deference. It is simply— You do need an ambiguity before we start hanging over our job to have some straight-up evidence. See, I'm way past my time, but, Mike, if Your Honor would indulge me, one point on 834. We're relying pretty much, in terms of the retroactivity question, on the last clause of 834, which says that to get this retroactive coverage, the individual, quote, must be eligible for such assistance at the time such caring services were furnished. And the point of a waiver program, the point of having a limited number of slots available for the waiver program, is you are not eligible for those services until there's a slot available for you and you are admitted into the program. And until that happens, you are not eligible for that service under the program. Therefore, it's a retroactive issue. Thank you. Questions? No. Thank you. Thank you. Thank you. May it please the Court, Eric Carlson for plaintiffs and appellees. Congressional intent here is clear, and that intent is determinative. Plaintiffs would like to emphasize two points regarding the statutory provisions that are at the center of this case. First of all, the retroactive coverage guarantee is broad and unambiguous. Second, the home community-based services provisions do not mention retroactivity in any way. I'd like to start with the retroactive coverage requirement, the AA34. AA34 is written in a way that establishes that the date of application is irrelevant for determining the initial date of coverage, as long as the services are provided no earlier than three months prior to the month of application. And they were eligible for such assistance during those three months. That's right. I mean, your brief actually quotes this language and has a period before – I mean, you have a period, but there's no period in this provision. And what comes after is exactly what they're refining upon, which is the requirement that the person have been eligible for the services during those three months. Yes, Your Honor. And you're not eligible if you don't have a plan. There are – the purpose of this provision is to make sure that coverage is not delayed due to the date of application. Okay, but let's – I mean, but the provision itself, the word said that you have to be eligible. And then another provision tells us you're not eligible if you don't have a plan of care. That's – I'm not really thinking about the purpose right now. I'm sort of – I'm focused on what Congress has said in the statute. And that seems to be what it has said. I'd like to make two points in response to that, Your Honor. First of all, when Congress intends to limit retroactivity, Congress has done so very explicitly. We refer in the brief to the Qualified Medicare Beneficiaries Provision, which was enacted in 1986. And in that provision, Congress specifically said that eligibility would not begin until the month after the person became a beneficiary. So their – the point of that is that Congress, when it knows how to limit retroactivity, does so explicitly. They did exactly that here, it would seem, by saying you must have been eligible for that assistance during the three months. That is a limitation upon this retroactivity provision. It's expressed. I don't really see any inconsistency with the principle that you're talking about. I'd suggest a couple of inconsistencies, Your Honor. That the eligibility – the statute is written so that eligibility is not to be delayed based on application date. And it similarly is not to be delayed based on the completion of post-application procedures. When you say that, is that because of the parenthetical? If such individual was or upon application would have been eligible for such assistance? So that if they had applied three months earlier, then they would have been eligible. It contemplates that the date of application is not determinative. And also the statute contemplates that coverage can precede the month of application by three months. So by necessity, it calls for these determination – these initiation of coverage prior to application and prior to the completion of these processes, which by necessity must be post-application. That says, though, that – I mean, I understand your point that to some extent it's saying we're not going to hold out payments based on paperwork. But you must have been, in fact, eligible at the particular moment for Ohio under this provision to pay for services at that time. And one of the – I mean, one of the requirements for eligibility expressly, and it's not a ministerial requirement, is that there be a plan of care. And there wasn't. I mean, I would also point to the nursing facility statute, Your Honor, that the language is very similar. The home community-based service – What section is that? Do you happen to recall? 1396R, sub B, sub 2. So this is – So 42 United States Code, 1396R, and sub B, sub 2. And that statutory provision provides that in the nursing facility context, services will be provided in accordance with the plan of care. That'd be better for you. I would suggest, Your Honor, that the difference is infinitesimal, that it's – those terms are defined in – the law dictionary gives them as synonymous. And we would suggest that if we're looking for congressional intent, which of course we are, that it would be implausible, we would suggest, that Congress would make it such a very subtle distinction to say that we in Congress said, and we meant there to be no retroactivity. Yes, I mean – And we said in accordance, Your Honor. Bill, did you have something? No. Go ahead. I mean, in accordance with is marginally better. But, you know, my sense is maybe that's an ambiguity, in which case we have Mr. Clare's arguments of battery awaiting there. I'll just be candid with you. I mean, I have a very hard time seeing how one can act pursuant to something that does not yet exist. And the idea that pursuant to is synonymous with consistent with, if we are interpreting this as the English language is normally spoken, which I think we are because these are not defined terms in the statute, nobody talks this way. Nobody says I'm acting pursuant to, you know, something that hasn't even come into being yet. So it seems that the state has a fair point when they say that the district court's interpretation here is simply rewriting the language, and rewriting important language that Congress, you know, if we want to talk about purposes of planning care is a pretty important thing in this regime, as I understand it. I'd like to make two points, Your Honor. First of all, we would suggest that there's nothing in the home community-based services statute to suggest that the plan of care is meant to be a limitation of care. It's meant as a positive thing, too, so to make sure that beneficiaries' care is planned appropriately for the future. There's nothing in that language that suggests that it's meant to be a limitation on the retroactivity that broadly applies in Medicaid, if the retroactive coverage is accepted in every facet of Medicaid. And we would suggest that Congress should do more than use the terminology. Second, you referred, Your Honor, to the term consistent with, and that's also a term that's used in the home community-based services statute. That exact language that is – it says pursuant to a written plan of care in 1396 NC, and in that same section, it says that services must be provided consistent with a written plan of care. I'm sorry, that same section. Is that C1, to recruit? C4, I think. C4. So we're – that's the exact language that's used by the district court, and in that case, if we're attempting to draw lines here, we have to be able to say that Congress intended to deny retroactivity through the use of the term pursuant to, and yet, three, four subsections later, a couple hundred words later, there's use of the term consistent with. I mean, usually we say it had a different purpose or a different intent when it used a different language. I think the point, Your Honor, is we're talking about the exact same services. There's nothing to suggest that one of those subparagraphs deals with retroactivity and the other one doesn't. They're a discussion of the care that's provided, and the care is provided with a plan of care. That's the – No, this is 1396 and C. This is the home community services statute. And C? 1396 and, and subsection C, subsection 1 and subsection 4. Okay. So pursuant to is in 1 and consistent with, I believe, is in 4. Do you agree with what I said earlier that it might be that some of the services that were provided before the plan of care was created would not have been pursuant to the plan of care? They would have been outside of what the plan of care covered, and then those would not be reimbursed. Sure. That's always going to be – in any health insurance, including Medicaid, it is a retrospective review and a determination whether payment is going to be made. That would be true here as well. We're talking now about people who are in already approved either hospitals or nursing homes, right? And we're going to move them into more of a home setting. This concerns coverage for care provided in assisted living facilities, which is provided through home community-based services payment. And these may be individuals coming from elsewhere. They may be people who are already in an assisted living facility and have spent their money down to Medicaid eligibility levels. But in their brief, I think the fellows who briefed made the point that this is called a waiver for a good reason, because you're getting off the chart here and asking someone to approve – asking the state of Ohio, I guess, to pay for a different type of care. And doesn't it make sense that that needs to be investigated and approved before public funds are expended to either reimburse the family or wherever the recipient needs to be? I would not say off the charts. This is an optional service. But once a Medicaid – and there are multiple optional services. These waiver services are just one example. But once the state agrees to provide an optional service, it's subject to all Medicaid laws. And so individuals have access to those services. The reference has been made to a waiting list and limited enrollment. I'd like to address that. There is zero evidence in the district court, none whatsoever, of any limitations on eligibility. A state has the option – it's true – in a waiver program of establishing enrollment caps. And the state introduced no evidence that those enrollment caps have been an issue. We refer in the record – there's a deposition of Matthew Hobbs, page 1507 and 1510 of the record, where he – in his deposition testimony, he states that, you know, we haven't had a waiting list. It hasn't – you know, the limits haven't been approached. And if they could be – if they were approached, we could just raise the limit anyway. But the main point I want to make is there is no evidence in the district court that that enrollment – so for the purposes of the named plaintiffs and all the other class members, limited enrollment has not been an issue. Those services have been available to the people, essentially the same way nursing facility services or hospital services or outpatient physician services have been available. They've been – when people meet the standards, they're able to receive the coverage for those services. The first time that issue has been raised – One other factual point. One of the briefs – I think it might be the United States – says that the average time for the state to approve a plan of care once one is requested for a beneficiary is 8.4 days. I don't see you disputing that anywhere. So I gather that's an undisputed point in this case. Yes, that's not disputed. We would point out that that doesn't change the statutory analysis at all. I'm just trying to understand sort of the factual case. I'd like to address the deference issue very quickly. There has been no administrative determination here. The CMS argues that there was an administrative determination made in September of 2011. That is not true. What they cite in the briefs is a boilerplate provision. It's form language used in all HCBS waiver applications. The instructions indicate – this is item 6A – and the instructions for state that the state should fill in 6I. The state doesn't have to fill in 6A, 6B, 6C, et cetera, because they're boilerplates. It's simply a recitation. It's like the letter or whatever that we had in this case, Wheaton. Yes, I'm familiar with Wheaton. It was just utterly conclusory. It didn't explain anything. On that same note, there was a reference to Olmstead Update No. 3. Olmstead Update No. 3 is meant to increase access to home and community-based services. It established exceptions to the rule that the federal government claims at this point. It allowed provision of services prior to the development of a care plan under a, quote-unquote, provisional plan of care, which was just the identification of the services to be provided. And there was another discussion in the Olmstead Letter, Update No. 3, that allowed for reimbursement for case management services up to 180 days prior to the initiation of home and community-based services. So Olmstead Update, speaking of inconsistent administrative letters, this is an example of that. It doesn't support the position that the federal government is taking here. In fact, it says entirely the opposite. It allowed ways for the federal government to pay prior to the approval of a care plan. Anything else? Nothing. Thank you, counsel. Thank you. We've got two minutes for rebuttal. Mr. Gerrish? Thank you. Two main points. First, there was a conversation about the pursuant to a plan of care requirement. That's not the only requirement that an applicant must meet before being enrolled on a waiver. Another is that their level of care must have been determined. It's not that services must be in line with a specific level of care that's later determined. NC1 says the person must be wanting good respect to whom there has been a determination. Almost every time the district court quoted that language, it omitted the words, to whom there has been a determination. And that language is critical because it demonstrates that prior to enrollment, there must have been that determination. And your argument in your brief for assertion is that they could have done these things before the money was spent down. They could have started that process with the state. Yes, and there's evidence of that in the record. First, I direct the court to page IDs 254 and 256. On those pages, Mrs. Hilliard's case manager testifies at deposition that her case was unusual in that she started the application by going to the County Job and Family Services Department first and then came to the Passport Agency to have her plan of care and level of care completed. Typically, she said, it's done the other way. First, you go to the Passport Agency, and by rule, they may help you with your application, but it's not a requirement. And so you can start with these non-financial things, get those in place first, and then move on to the application. We think that those things make it clear first that retroactive eligibility can be achieved under the waiver in the right circumstances when you meet eligibility, and second, that it was not here. That said, I don't believe we should reach those issues. We should decide on standing in sovereign immunity. Thank you, counsel. The case will be submitted.